NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| **UNITED STATES,** | Criminal No. 79-mj-00125 (JAD) |
| v. | |
| **WILLIAM SHRENSEL,** | OPINION |

**JOSEPH A. DICKSON, U.S.M.J.**

This matter comes before the Court by way of Petitioner William Shrensel's ("Mr. Shrensel" or "Petitioner") Motion for Order Discharging Defendant's Early Release from Probation *Nunc Pro Tunc* and Setting Aside Conviction. (ECF 1). The Court conducted oral argument on this issue on February 19, 2019. Upon careful consideration of the parties' submissions and arguments, as well as the balance of the record for this matter, and for the reasons stated below, Petitioner's motion is **GRANTED.**

I. **RELEVANT BACKGROUND AND PROCEDURAL HISTORY**[1]

On August 8, 1979, the United States Secret Service arrested Petitioner, who was in his early twenties at the time. (Resp't Br. at 2, ECF. No. 9). Petitioner was charged with offenses related to the possession of co1unterfeit currency, (Aff. Of William Shrensel ("Shrensel Aff.") at 1, ECF No. 13-2), and, following the advice of his attorney, he ultimately accepted a plea under

---

[1] As nearly all of the operative facts in this matter occurred in 1979 and the early 1980s, and Petitioner first sought relief in 2018, the government entities involved have destroyed nearly all relevant records pursuant to their standard document retention policies. It is, therefore, impossible to present a definitive recitation of the pertinent facts. The following is cobbled together using the limited available records, as well as Petitioner's recollection of his arrest, sentencing, and probation.

18 U.S.C. §5021(b), the Federal Youthful Corrections Act ("FYCA"), which authorized sentencing judges to unconditionally discharge youthful offenders from probation prior to the expiration of the probation period. (Shrensel Aff. at 2, ECF No. 13-2); §18 U.S.C. §5021(b), repealed, Pub. L. No. 98-473, 98 Stat. 2027 (1984). The FYCA further provided that, if the court granted such an early discharge from probation, the offender's underlying conviction would be automatically "set aside," and the court would provide the youthful offender with a certificate to that effect. §18 U.S.C. §5021(b), repealed, Pub. L. No. 98-473, 98 Stat. 2027 (1984). Petitioner, however, understood that his conviction would also be set aside upon successful *completion* of probation (i.e., without the need for any other court involvement post-sentencing). (Pet'r Mot. at 2, ECF No. 1). Petitioner recalls the sentencing judge advising him that he "had to be clean for two years on probation in order to receive the expunction." (Shrensel Aff. at 2, ECF No. 13-2). After accepting the plea, the court sentenced Petitioner to a term of probation, which Petitioner completed without incident. (Id. at 2). Nothing in the limited record indicates whether the sentencing judge made an affirmative decision to deny Petitioner the "set aside" relief available under the FCYA or, alternatively, if the situation resulted from some ministerial oversight.

After successfully completing probation, Petitioner spent several decades employed in the private security, private investigation, and automotive industries and also raised a family. (*Id.* at 2). Petitioner represents that, during that period, he underwent several background checks, and none revealed his 1979 conviction. (*Id.*). In 2000, nearly two decades after completing probation, Petitioner learned for the first time that his conviction had not been set aside, and still appeared on his record. (*Id.*). At some point thereafter, Petitioner began to request records pertaining to his 1979 arrest. (Pet'r Mot. at 3, ECF No. 1). Ultimately, Petitioner was only able to obtain a copy of a single index card from the Clerk of the Court for

the United States District Court for the District of New Jersey, which referenced a magistrate proceeding, but was otherwise illegible. (*Id.*). On November 13, 2018, Petitioner filed an application requesting that the Court terminate his probation early, *nunc pro tunc*, and set aside his conviction pursuant to the FYCA. (*Id.*). In the alternative, Petitioner requested that the Court order that all documents related to his case be removed from the government's "central criminal files and placed in a separate storage facility with access only for bonafide criminal investigations by law enforcement authorities to effectively remove the 1979 conviction from his record." (*Id.* at 4). The Government opposes Petitioner's application. (*See generally* Resp't Br., ECF. No. 9).

## II. <u>DISCUSSION:</u>

The Government opposes Petitioner's request for a *nunc pro tunc* application of the FYCA's "set aside" provision on three grounds. First, the Government argues that the Court lacks jurisdiction to grant such relief because Congress repealed the FYCA in 1984. (*Id.* at 6-10). Second, the Government contends that the FYCA never authorized relief in these circumstances, as the sentencing court did not affirmatively terminate Petitioner's probation early. (*Id.* at 10-12). Finally, the Government argues that Petitioner's request is barred by the equitable doctrine of laches, given his delay in seeking relief. (*Id.* at 13-14). The court will address each argument in turn.

### a. <u>The Court has jurisdiction to grant Petitioner's request</u>

The Court will first consider whether it has the jurisdictional authority to effectuate any relief under the long-defunct FYCA. The Government contends that the Court lacks such authority, arguing, in pertinent part: "the FYCA provides no basis for an exercise in jurisdiction

here, having been repealed more than two decades ago". (Resp't Br. at 6, ECF. No. 9). This Court disagrees.

The Court recognizes that there are few opinions discussing the propriety of using the now-repealed FYCA to retroactively set aside or expunge pre-repeal convictions. It does not appear that any Court in this District has addressed the question. The few district courts that have considered the issue have reached varying conclusions. As the Government notes in its brief, at least one judge has found that the FYCA's repeal created an absolute bar against retroactive application. (*Id.* at 7) (citing *United States v. Fowler*, No. 66-CR-00171-WDM, 2006 U.S. Dist. LEXIS 84761 (D. Colo. Nov. 21, 2006) ("Regrettably, the FYCA was repealed in its entirely by the Sentencing Reform Act of 1984 and no longer provides a jurisdictional tool for me to set aside or expunge the record.").[2] Petitioner argues that a different court has reached the opposite conclusion, retroactively setting aside and expunging a petitioner's conviction pursuant to the FYCA despite noting the statute's repeal. (Pet'r Mot. At 8-9, ECF No. 1 (citing *Brown v. United States*, 197 F. Supp. 3d 726, 735 (E.D. Penn. 2016)).

---

[2] While the Government also cites *United States v. Madonia*, CR-78-00143, 1990 U.S. Dist. LEXIS 20851, at *4-5 (E.D.N.Y. May 9, 1990) for the same proposition, the Court finds that the Madonia decision lends little support for the Government's argument. In *Madonia*, the petitioner's conviction had already been set aside pursuant to the FYCA. Id. at *1. The United States District Court for the Eastern District of New York had to determine whether it could use the FYCA's set-aside language to justify a post-repeal expungement of the petitioner's conviction and arrest records from the court's files. *Id.* Expressing reservations about whether the FYCA *ever* authorized a records purge (as opposed to merely vacating convictions), the *Madonia* court found that the statute's repeal nevertheless conclusively eliminated any such power. *Id.* at **4, 7. Importantly, the *Madonia* court also observed that the *ex post facto* clause likely required that eligible convictions still be set aside when otherwise appropriate, despite the FYCA's repeal. *Id.* at *6. In any event, the *Madonia* court's determination regarding the availability of post-repeal expungement conflicts with the United States Court of Appeals for the Third Circuit's longstanding precedent, and is therefore inapplicable here. *See generally United States v. Doe*, 980 F.2d 876 (3d Cir. 1992).

While it has not addressed the jurisdictional issue explicitly, the United States Court of Appeals for the Third Circuit has nevertheless provided essential guidance. In *Doe*, decided years after Congress repealed the FYCA, the Third Circuit ultimately found that a district court could still retroactively expunge an individual's conviction pursuant to the defunct statute. *Doe*, 980 F.2d at 882-83. *Doe* is factually distinct from Mr. Shrensel's case, such that the Third Circuit's ultimate determination that the movant was entitled to expungement is not dispositive here. In *Doe*, the movant had been "sentenced to five years of probation, conditioned on restitution within three years." *Id.* at 877. He "made full restitution within the three year period and the court ordered that he be 'unconditionally discharged from probation' and that his conviction be 'set aside'" pursuant to the FYCA. *Id.* At some point later, while undergoing a background check in connection with his application for a professional license, the movant discovered that the earlier conviction remained on his record (albeit marked "set aside"). *Id.* He then petitioned the district court for an order expunging his conviction from official government records. In *Doe*, therefore, the question was whether the FYCA's "set aside" language permitted such an expungement, as opposed to a mere "set aside" notation. The Court of Appeals found that it did, and remanded the case with instructions for the district court to enter an order enacting that relief. *Id.* at 883.

For the purposes of a jurisdictional inquiry, the factual differences between *Doe* and the instant case are irrelevant. *Doe*'s guidance is more generally applicable. In short, the Court of Appeals directed the district court to order an expungement pursuant to the FYCA several years after that statute's repeal. This Court is confident that if, as the Government suggests, that repeal barred all retroactive relief, the Court of Appeals would have reached a different conclusion.

Congress' decision to repeal the FYCA does not, therefore, prevent courts from applying the "set aside" provision post-repeal if doing so would otherwise be appropriate.

### b. Petitioner's conviction should be set aside under the FYCA

The Government next argues that, even if the Court does have the authority to grant relief under the now-defunct FYCA, such relief would be inappropriate here, given the facts of Mr. Shrensel's case. (Resp't Br. at 10-12, ECF. No. 9). Citing the Supreme Court's decision in *Tuten v. United States*, 460 U.S. 660, 667-68 (1983), the Government contends that where, as here, a youthful offender competed the full term of probation, a retroactive set aside would only be appropriate where the record suggests that the district court would have granted an early discharge from probation if not for some oversight. (Resp't Br. at 10-12, ECF. No. 9). The Court agrees with the Government's general statement of the law, but reaches a different conclusion when applying it to the facts of this case.

In making this determination, the Court finds that United States District Court for the Eastern District of Pennsylvania's decision in *Brown v. United States of America*, 197 F. Supp. 3d 726 (E.D. Pa. 2016), which involved facts strikingly similar to Mr. Shrensel's current situation, is persuasive. In *Brown*, the petitioner pled guilty to stealing government property and received a sentence of probation under the FYCA, which he completed without incident. *Id.* at 728. The petitioner represented that "after his arrest, his court-appointed attorney . . . advised him that if he pleaded guilty to the offense and 'did not get into any trouble' on probation, his criminal record would be expunged." *Id.* Despite fulfilling those obligations, he did not receive a certificate indicating that his conviction had been set aside, and had no further contact with his attorney or any probation officers. He then went on with his life for several decades, believing that his conviction had been expunged, until a 2005 background check revealed that it remained

6

on his record. *Id.* Nonetheless, the petitioner did not take any further action until he filed an application for a nunc pro tunc set-aside and expungement in 2015. *Id.* at 728-29.

The evidentiary record in *Brown* was sparse. By the time the petitioner sought relief, the only official record that remained was a single index card maintained by the United States Probation Office, as all other documents had long since been destroyed pursuant to the Federal Judiciary's document retention policy. *Id.* at 729. That index card indicated that the petitioner had served his entire probation sentence (i.e., the sentencing court had not granted an early discharge.). *Id.* The balance of the evidentiary record consisted of the petitioner's own recollection regarding the circumstances of his plea and sentencing and of his behavior while on probation. *See generally id.*

Citing the Supreme Court's decision in *Tuten*, the *Brown* court noted that an offender's mere completion of probation would not be sufficient to justify a set aside or expungement under the FYCA. *Id.* 731-32. Rather, the statute required that the sentencing court make an affirmative decision to grant the offender an early discharge from probation. *Id.* Critically, the *Brown* court acknowledged that the converse is also true:

> *Tuten* makes clear that it was the responsibility of the probation officer to alert the Court about the possibility of an early release for an offender sentenced under the FYCA: "Prior to the expiration of a youth offender's term of probation, a probation officer [wa]s required by the Parole Commission to file a report evaluating the probationer's conduct and progress and reminding the court that an early unconditional discharge will automatically set aside the conviction." *Tuten*, 460 U.S. at 668 n.12 (citing Admin. Office of the U.S. Courts, Guide to Judiciary Policies and Procedures: Probation Manual § 5011 (1978)). This requirement was designed to "ensure that the court [wa]s made aware of its duty to decide whether granting an early unconditional discharge [wa]s warranted in light of the remedial ends of the [F]YCA." *Id.* Therefore, if Petitioner was not issued early release from probation and a certificate of completion, it was not due to his own lack of diligence, because the probation officer was required to make a

7

>report to the sentencing court, and the court had a duty to decide whether early release was warranted.

*Id.* at 733 (brackets in original). In short, an offender sentenced under the FYCA could not be denied a set-aside by default. The sentencing court had to make an affirmative decision to deny him/her such relief, based upon information provided by a knowledgeable probation officer.

Given the passage of time and the destruction of nearly all relevant records, it was impossible for the *Brown* court to determine if the petitioner's probation officer had prepared a report for the sentencing court, let alone whether the sentencing court had made an affirmative decision to deny the petitioner relief under the FYCA. *Id.* at 733-34. The limited record reflected only that the petitioner had complied with the terms of his probation and had, in fact, had no further criminal incidents over the following four decades. *Id.* The *Brown* court therefore determined that the petitioner was entitled to a retroactive set-aside/expungement under the FYCA. *Id.* at 734.

To say that Petitioner's situation is similar to that at issue in *Brown* would be an understatement. Indeed, if a law school professor hoped to create a hypothetical scenario to test students' knowledge of *Brown*, he or she could likely do no better than Mr. Shrensel's case. As in *Brown*, the record in Mr. Shrensel's case reflects the following: (1) Mr. Shrensel's court-appointed attorney advised him that his conviction would be expunged following his successful completion of probation; (Shrensel Aff. at 2, ECF No. 13-2);[3] (2) Mr. Shrensel successfully completed his entire term of probation without incident; (*id.*); (3) given the near-complete destruction of records (other than a single index card) there is no evidence suggesting whether any probation officer prepared a report regarding Mr. Shrensel for the sentencing judge, or that

---

[3] Petitioner represents that the sentencing court gave him the same advice. (*Id.*) ("I remember that the judge told me that I had to be clean for two years on probation in order to receive the expunction.").

the sentencing judge made an affirmative decision about whether to discharge Mr. Shrensel from probation early; (4) Mr. Shrensel believed that his conviction had been expunged, and did not learn that it remained on his record until it surfaced during a background check decades later; and (5) by the time Mr. Shrensel first learned that the conviction remained on his record in 2000, the relevant records would have already been destroyed under the Judiciary's document retention policy. Therefore, he has not constructively contributed to the lack of available evidence.

Nothing in the record provides any explanation as to why the sentencing court might have decided to deny Petitioner the benefits of an early discharge under the FYCA. Taking advantage of the second chance the statute afforded, Petitioner completed his probation without incident, and went on to become a productive member of society. That is precisely the type of positive behavior the FYCA was meant to incentivize. *Brown*, 197 F. Supp. 3d at 732 (citing *Tuten*, 460 U.S. at 667). Based on the foregoing, the Court finds that, to the extent the sentencing court did not grant Petitioner an early discharge from probation, that turn of events was almost certainly the result of some administrative oversight. Petitioner is therefore entitled to *nunc pro tunc* relief under the FYCA.

### c. The Equitable Doctrine of Laches is Inapplicable Here

Finally, the Government argues that the relief Petitioner seeks is barred by the doctrine of laches. Specifically, the Government contends that, because Petitioner discovered that the conviction remained on his record in 2000, and yet did not seek judicial intervention until 2018, he is not entitled to the equitable remedy of *nunc pro tunc* relief. (Resp't Br. at 13-14, ECF. No. 9). In support of its argument, the Government cites the Third Circuit's decisions in *Hatkewicz v. Attorney General*, 350 F. App'x 667 (3d Cir. 2009) and *Yilmaz v. Attorney General*, 150 F. App'x 180 (3d Cir. 2005). Neither case is applicable here.

*Hatkewicz* involved a "a petition for review of a final order of removal of the Board of Immigration Appeals." 350 F. App'x at 668. The petitioner challenged his removal on multiple grounds, including that he should be granted citizenship, *nunc pro tunc*, based on the fact that his parents filed an application for naturalization on his behalf in 1990. *Id.* at 670. That application went unadjudicated, however, and the petitioner "did not inquire about the 1990 Application until he faced removal fourteen years later." *Id.* at 671. The Court of Appeals ultimately found that "[e]ven assuming that the INS was to blame for part of the delay, the fact that the delay continued for fourteen years – from 1990 to 2004 – is directly attributable to [p]etitioner. *Nunc pro tunc* relief is not appropriate under these circumstances." *Id.* *Hatkewicz* has no bearing on Mr. Shrensel's situation. Unlike Mr. Hatkewicz, who could have resolved the 1990 naturalization application at some point prior to his removal (thus rendering *nunc pro tunc* relief unnecessary), there is nothing that Mr. Shrensel could have done in 2000 or thereafter that would have changed what the sentencing court did, or failed to do, twenty years prior. Even if he had acted immediately upon discovering that the conviction remained on his record, Mr. Shrensel would have required the very same *nunc pro tunc* relief he seeks today, and his subsequent delay changed nothing.

The Third Circuit's decision in *Yilmaz* is likewise inapposite. That appeal concerned Mr. Yilmaz's failure to timely file a motion reopen his immigration proceedings. 150 F. App'x at 181-82. Yilmaz argued, in pertinent part, that his delay was attributable to his prior counsel's negligence. *Id.* The Court of Appeals determined that, even if it were to equitably toll the filing deadline to account for certain of the delay, it would not be sufficient save Yilmaz's application, as "Yilmaz had actual knowledge of the alleged errors of his prior counsel at least 16 months before he filed the motion to reopen alleging ineffective assistance." *Id.* at 183. In short, Yilmaz

himself delayed and that inaction significantly contributed to his situation, thereby limiting the availability of equitable tolling. *Id.* In a footnote, the Court of Appeals noted that Yilmaz's request for "*nunc pro tunc* relief to deem his motion to reopen to have been timely filed also fails for the same reasons." *Id.* at 183, n.5. As in *Hatkewicz*, Mr. Yilmaz's inaction created the need for *nunc pro tunc* relief. That is simply not the case with Mr. Shrensel. Unlike Mr. Hatkewicz and Mr. Yilmaz, Mr. Shrensel had no control over his destiny during his period of delay. He could not have done anything between 2000 and 2018 that would have altered what the sentencing court did with regard to his probation in the early 1980's.

From an even more basic standpoint, invoking the doctrine of laches to deny Mr. Shrensel relief would not promote equity. While his delay was lengthy, it was also harmless. By the time Mr. Shrensel discovered that his conviction had never been expunged, the time for the sentencing court to take the action necessary to trigger the FYCA's "set-aside" provision had long since passed. Moreover, the judiciary would have destroyed the records pertinent to his conviction and probation decades prior under their document retention policy. His delay did not prejudice any party, lead to the loss of evidence, or make it more difficult for the Court to adjudicate his request. The Court therefore finds that it would be inappropriate to apply the doctrine of laches under these circumstances.

### III. <u>CONCLUSION</u>:

Based on the foregoing, Petitioner's Motion for Order Discharging Defendant's Early Release from Probation *Nunc Pro Tunc* and Setting Aside Conviction, (ECF 1), is **GRANTED**. Petitioner's shall be deemed, *nunc pro tunc*, to have been discharged from probation early. That early discharge shall operate to "set aside" his conviction pursuant to §18 U.S.C. §5021. Finally, in accordance with the Court of Appeals' decision in *Doe*, Petitioner is entitled to have the

conviction expunged from his record. The parties shall meet and confer regarding the preparation of an appropriate form of Order enacting this relief, and shall submit a proposed Order for the Court's consideration **on or before June 12, 2020**.

Dated:  May 20, 2020

s/ Joseph A. Dickson  
**JOSEPH A. DICKSON, U.S.M.J.**